# 14-1208

*In the*
*United States Court of Appeals*
*For the Second Circuit*

**ERICA BERG,**

*Plaintiff-Appellee*,

**v.**

**MICHAEL SORBO,**

*Defendant-Appellant***,**

JOHN MILLER, OFFICER, FRANK MONTAGNA, SERGEANT, LEONARD GALLO, EMERMAN, OFFICER, FINOIA, OFFICER, KATTIS, SERGEANT, JOHN DOE, UNKNOWN OFFICERS, JOSEPH MATURO, MAYOR and TOWN OF EAST HAVEN, CT,

*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

BRIEF FOR PLAINTIFF-APPELLEE

| | |
|---|---|
| KEVIN SMITH, ESQ. | CONWAY LAW FIRM, LLC |
| *Attorney for Plaintiff-Appellee* | *Attorneys for Plaintiff-Appellee* |
| 129 Church Street, Suite 400 | 7 Elm Street |
| New Haven, CT 06510 | New Haven, CT 06510 |
| (203) 980-7559 | (203) 624-1400 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………...iii

STATEMENT OF THE ISSUES……………………………………………..……1

STATEMENT OF THE CASE……………………………….……………….....…1

STATEMENT OF THE FACTS…………………………………………………....2

SUMMARY OF THE ARGUMENT………………………………………………4

LAW AND ARGUMENT……………………………………………………….…6

    I.    THE DISTRICT COURT PROPERLY APPLIED THE CORRECTED AFFIDAVITS DOCTRINE AND CORRECTLY REACHED THE CONCLUSION THAT A CORRECTED AFFIDAVIT WOULD NOT HAVE SUPPORTED EVEN ARGUABLE PROBABLE CAUSE…………………………………6

        A. The Proper Application Of The Corrected Affidavits Doctrine…..6

        B. The District Court Gave Conway's Affidavit The Appropriate Consideration In Its Application Of The Corrected Affidavits Doctrine, Rather Than The Absolutist Consideration Urged By Sorbo, And Correctly Concluded That A Corrected Affidavit Would Not Have Supported Even Arguable Probable Cause…….7

    II. THE DISTRICT COURT APPROPRIATELY CONCLUDED THAT OFFICER SORBO WAS NOT ENTITLED TO QUALIFIED IMMUNITY…………………………………………………………..9

        A. Connecticut's Interfering With An Officer Statute Does Not Embrace Berg's Strictly Verbal Conduct That Evidences No Specific Intent To Interfere……………………………………….9

    B.  Sorbo Is Not Entitled To Qualified Immunity Even When Conway's Murky Affidavit Is Considered……………………….10

    C.  Sorbo Is Not Entitled To Qualified Immunity Given The Absence Of Even Arguable Probable Cause In The Corrected Affidavit ………………………………………………………………………12

CONCLUSION……………………………………………………….....…13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004)……………………...……..6, 7

*Golino v. City of New haven*, 450 F.2d 864 (2d Cir. 1991)……………………...6, 7

## STATE CASES

*State v. Aloi*, 280 Conn. 824 (2007)……………………………………..…9

*State v. Peruta*, 24 Conn.App. 598, *cert denied*, 219 Conn. 912 (1991)………………………………………………………………………...10

*State v. Silva*, 285 Conn. 447 (2008)……………………………………....9

*State v. Williams*, 205 Conn. 456 (1987)…………………………………... 10

## STATUTES

42 U.S.C. §1983……………………………………………………………1

Connecticut General Stat. §53a-167a………………………………..……..5, 9

## STATEMENT OF THE ISSUES

I. Did the District Court correctly apply the "corrected affidavits doctrine" in finding that the corrected affidavit would not have supported even arguable probable cause?

II. Did the District Court appropriately conclude that Officer Sorbo was not entitled to qualified immunity?

## STATEMENT OF THE CASE

This lawsuit arises from the dismissal of all criminal charges against the Plaintiff-Appellant, Erica Berg, despite having been arrested pursuant to a warrant on a charge of interfering with an officer in violation of Conn. Gen. Stat. Sec. 53a-167a. The sole affiant in that warrant was the Defendant-Appellant, Officer Sorbo.

Following dismissal in the state criminal court, Ms. Berg brought an action for violation of her civil rights under 42 U.S.C. Sec. 1983 for false arrest and malicious prosecution in violation of the Fourth Amendment, retaliation for exercising rights guaranteed by the First Amendment, and denial of equal protection of the laws in violation of the Fourteenth Amendment, as well as related state claims. Joint Appendix (hereinafter "A-__" or "A-__-__"), at A-13-24.

Ms. Berg thereafter survived Sorbo's motion for summary judgment as to all but her conspiracy claims. A-263. As determined by the District Court in the course of denying Sorbo the summary judgment he sought, the warrant itself was infirm insofar as the Court found "that Ms. Berg has presented evidence that

permits an inference that Officer Sorbo acted recklessly or intentionally with regard to the truth of the statements in his affidavit." A-258.  Thus, the District Court applied the "corrected affidavits doctrine", disregarding the allegedly false material and supplying any omitted information, and came to the conclusion that the facts still did not support a finding of "arguable probable cause" such that "a reasonable jury, drawing all inferences in favor of Ms. Berg, could decide that it was objectively unreasonable for Officer Sorbo to believe that probable cause existed, and that officers of reasonable competence would not disagree on whether the probable cause test was met." A-260-263.  From this denial, Sorbo brought the appeal now before this Court.

## STATEMENT OF THE FACTS

On July 19, 2009, Erica Berg drove with her boss, Mayor April Capone, to the Sandpiper Restaurant in East Haven. A-36, 201.  The Sandpiper is adjacent to both the East Haven Town Beach and a parking lot used by beachgoers. A-42, 204.  On that day, Sorbo was assigned to beach patrol duty that included oversight of the parking lot.  Id.  As the parking lot began to fill, cars started parking in a haphazard manner and eventually citizens complained to Sorbo about the difficulty they had getting in and out of the parking lot and the potential danger to

2

pedestrians. A-43, 204-05, 251. Sorbo ultimately ticketed six vehicles and requested tow trucks to remove the ticketed automobiles. Id.

As tow trucks arrived and began hitching cars, Ms. Berg and Mayor Capone encountered distressed citizens whose vehicles were being towed. A-37, 201, 252. After speaking with these citizens, Ms. Berg approached one of the already-stopped tow trucks and spoke to its driver, John Conway. A-37-8, 201, 252. Though Sorbo admitted he could not hear the Berg-Conway conversation, he would later claim in his arrest warrant affidavit that Berg "asked [Conway] not to leave the area with the vehicle…". A-260. In further support of this contention, Sorbo submitted an affidavit from Conway--dated over four years after the incident--that variously characterizes Berg's discussion with Conway as a question about putting the car down, an instruction, and a request, all within the space of three consecutive paragraphs. A-184-85.

All parties agreed that it was a brief, strictly verbal interaction, and according to Berg she simply asked whether he could possibly "drop" the car he was preparing to tow if the car's owner—who was standing nearby—paid a "drop fee". A-87-88. Conway did not drop the cars, but rather spoke with Mayor Capone, who asked to speak with Conway's supervisor. A- 46, 206. Conway acquiesced to Capone's request, and following Mayor Capone's conversation with

3

Conway's supervisor, Conway followed his supervisor's instruction to drop the vehicle he had in tow and leave the parking lot. Id.

In the meantime, Officer Emerman of the East Haven Police Department arrived and Ms. Berg assisted him in setting up traffic cones in order to establish safe entry and exit from the parking lot. A-248. Officer Emerman never saw any conduct by Ms. Berg that he felt gave rise to probable cause for her arrest, nor was he ever asked by Sorbo to arrest Ms. Berg. A-249. In fact, Sorbo never mentioned to Emerman that Berg had or was interfering with him, and Sorbo made no effort to prevent Berg from assisting Emerman. Id. Nonetheless, more than six weeks later, following a cruise with his daughter during which she told him "Dad, you'll get more respect from the kids on the street than you did that day" if he had Berg arrested, Sorbo applied for an arrest warrant. A-244. On the basis of that warrant, which listed three acts that Sorbo claimed constituted interference—at least one of which Sorbo conceded under oath he had described incorrectly in his case/incident report and his affidavit—Ms. Berg was arrested. A-259.

## SUMMARY OF THE ARGUMENT

The District Court correctly applied the "corrected affidavits doctrine" as it is recognized by this Circuit, and not the self-serving version of that doctrine set forth by Sorbo. Moreover, the District Court did exactly what Sorbo asks by

4

including the Conway affidavit as part of its analysis, though not as its sum. Thankfully, however, the District Court did not accept Sorbo's invitation to conduct a wholesale rewrite of the "corrected affidavits doctrine" by substituting the self-contradictory Conway affidavit for the Sorbo warrant.  Nor should it have, given the state of the law in this area.  Plainly stated, there is no precedent for the application of the "corrected affidavits doctrine" urged by Sorbo.

Moreover, the District Court correctly declined Sorbo's invitation to upset thirty years' worth of precedent with regard to the specific intent crime of interfering with an officer.  As the District Court properly noted in its decision, "Connecticut's longstanding rule…remains that, apart from disobedience to a direct police command, §53a-167a proscribes 'only physical conduct and fighting words' and does not extend merely to raising questions about a police officer's actions.  None of the cases relied on by Sorbo are to the contrary." (Internal citations and quotations omitted) A-255.  Because Berg's conduct was merely verbal interaction that amounted to raising questions about a police officer's actions, and not physical conduct that was specifically intended interfere with Sorbo's duties, Sorbo is not entitled to qualified immunity and the District Court's decision should be upheld.

**LAW AND ARGUMENT**

I. **THE DISTRICT COURT PROPERLY APPLIED THE CORRECTED AFFIDAVITS DOCTRINE AND CORRECTLY REACHED THE CONCLUSION THAT A CORRECTED AFFIDAVIT WOULD NOT HAVE SUPPORTED EVEN ARGUABLE PROBABLE CAUSE.**

**A. The Proper Application Of The Corrected Affidavits Doctrine**

Though "the issuance of a warrant by a neutral magistrate judge" does create a "presumption that it was objectively reasonable for the officers to believe that there was probable cause…" *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), that presumption can be properly overcome when the plaintiff demonstrates that the affiant knowingly or recklessly made material false statements or omissions in his affidavit in support of the warrant. *Id.* When such a showing is made, the presumption of probable cause is overcome and the reviewing court must apply the "corrected affidavits doctrine" to determine whether an officer is entitled to qualified immunity. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).

The proper application of this doctrine requires the court to "put aside allegedly false material, supply any omitted information, and then determine whether the contents of the 'corrected affidavit' would have supported a finding of arguable probable cause." *Id.* At 744. If "…the corrected affidavit would not support a reasonable officer's belief that probable cause existed…", then the

identified factual disputes are material to resolving the issue. *Id.* At 744 (internal citations and quotations omitted). This is so because "[a]n officer can have no reasonable grounds for believing that a warrant was properly issued if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Golino v. City of New Haven*, supra, at 871 (internal quotation and citation omitted).

>  **B. The District Court Gave Conway's Affidavit The Appropriate Consideration In Its Application Of The Corrected Affidavits Doctrine, Rather Than The Absolutist Consideration Urged By Sorbo, And Correctly Concluded That A Corrected Affidavit Would Not Have Supported Even Arguable Probable Cause**

Sorbo concedes that the District Court properly determined that Berg submitted sufficient evidence to trigger the correction analysis and appropriately ignored the potentially false "first" and "third" acts described by Sorbo in his arrest warrant affidavit. A-257-59. Sorbo nonetheless complains that the District Court's correction analysis failed to consider Conway's affidavit, a claim that does not hold up under even the most cursory scrutiny.

In fact, the District Court took great pains in its correction analysis to consider Conway's affidavit, devoting three pages of its analysis to its consideration of the Conway affidavit. A-260-62. Though the District Court noted the slightly more detailed and suggestive nature of the Conway affidavit, it nonetheless concluded

7

that "[t]he affidavit does not elaborate on the statement that Ms. Berg stopped a tow truck driver."  A-260.  Moreover, the District Court detailed the numerous internal inconsistencies in the Conway affidavit, such as the evidence in the affidavit that Conway was already stopped when Berg approached him, and the silence of the affidavit as to the tone and nature of Berg's request.  A-261.

The District Court also could have found that Conway's affidavit gave varying descriptions, twice referring to Berg as asking or requesting and once describing her as having instructed him to wait, all within the span of three consecutive paragraphs describing the same conduct.  A-184-85.  Though it did not make such a finding, the District Court did note the discrepancies between Conway's August 21, 2013 affidavit and Sorbo's arrest warrant affidavit as follows: "In the arrest warrant affidavit, however, Officer Sorbo reports only a single ask by Ms. Berg, and also reports that Mr. Conway stated that he had raised the need to fulfill Officer Sorbo's order only to the mayor, and not to Ms. Berg."  A-262.

Ultimately, having given Conway's affidavit thorough consideration, the Court concluded "I am required to resolve this discrepancy in favor of Ms. Berg, crediting the shorter, murkier version of the conversation included in the arrest warrant affidavit."  A-262.  In so doing, the Court found "…there are genuine issues of material fact as to the circumstances known to Officer Sorbo when he wrote the affidavit, including exactly what was said between Ms. Berg and Mr.

Conway, how it was said, and the length of time Mr. Conway was delayed as a result of his interaction with Ms. Berg." *Id.* Plainly stated, there is no basis for Sorbo's contention that the District Court failed to consider the Conway affidavit. Rather, the record is clear that the District Court properly included the Conway affidavit in its correction analysis and gave it the weight it deserved, internal contradictions and all.

## II. THE DISTRICT COURT APPROPRIATELY CONCLUDED THAT OFFICER SORBO WAS NOT ENTITLED TO QUALIFIED IMMUNITY.

### A. Connecticut's Interfering With An Officer Statute Does Not Embrace Berg's Strictly Verbal Conduct That Evidences No Specific Intent To Interfere

As noted by the District Court, Connecticut's Interference statute, Conn. Gen. Stat. §53a-167a, "requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action." A-254 (internal quotation and citation omitted). As also noted by the District Court, Sorbo's reliance upon *State v. Aloi,* 280 Conn. 824 (2207), and *State v. Silva*, 285 Conn. 447 (2008), is misplaced as "the holdings in those cases are limited to the situation where the arrested individual states a refusal to show identification in violation of a police officer's direct command." A-254 (internal citations and quotations omitted).

9

Thus, in reviewing Ms. Berg's actions—simply asking Conway, who was already stopped, if he would be able to drop the car he was preparing to tow—the District Court was right to find that "…such innocuous conduct would likely fall farther outside the statute than questioning a police officer's authority or protesting his or her action." A-262 (internal citation and quotation omitted). Moreover, Sorbo's reliance upon *State v. Peruta*, 24 Conn.App. 598, *cert denied*, 219 Conn. 912 (1991) is simply inapposite. There, the defendant was given a direct order by police to leave the scene, and then returned and defied a second order to leave. Here, Ms. Berg never received a direct police order, and she never repeated her request to Conway. And Conway ultimately dropped the car he was preparing to tow as a result of his supervisor's instruction, not Ms. Berg's request. Plainly, for this Court's purposes, the *Peruta* case could not be less relevant, especially given *State v. Williams*, 205 Conn. 456 (1987), and its progeny.

### B.  Sorbo Is Not Entitled To Qualified Immunity Even When Conway's Murky Affidavit Is Considered

It is worth noting that Conway's affidavit, and the facts contained in it, are disputed, despite Sorbo's contention to the contrary. Ms. Berg's testimony regarding the interaction she had with Mr. Conway, directly contradicts much of Conway's account. The only things that are undisputed about Conway's affidavit

are its existence, and the fact that Conway claims to have relayed its contents to Sorbo without Ms. Berg's knowledge.

Yet, even when Conway's affidavit is properly considered, as it was by the District Court, Sorbo cannot avail himself of the shield of qualified immunity because the affidavit itself sheds insufficient light upon "what exactly was said between Ms. Berg and Mr. Conway, how it was said, and the length of time Mr. Conway was delayed as a result of his interaction with Ms. Berg." A-262. Certainly, Conway's affidavit in no way indicates that Ms. Berg physically prevented Conway from doing anything, and his equivocal description of their interaction only justifies the District Court's conclusion that even when the Conway affidavit is considered "…there are genuine issues of material fact as to the circumstances known to Officer Sorbo when he wrote the affidavit…". *Id*.

Even in Conway's version of his interaction with Berg, there is no suggestion that Berg blocked his movement, threatened retaliation if he did not comply with her request, or in any other way sought to force Conway to deal with what he even described as her request. Accordingly, the District Court was right to find that "[i]f all of these factual issues were resolved against Officer Sorbo and all related inferences were dran in Ms. Berg's favor, then the evidence would be that Ms. Berg simply asked Mr. Conway, who was already stopped, if he would not mind holding off towing the car until the mayor could speak with him." A-262.

11

Moreover, Conway's affidavit makes it clear that his decision to drop the car he was preparing to tow in accordance with Sorbo's order was a direct result of his supervisor's instructions, not Ms. Berg's request. A-185.

    **C.**    **Sorbo Is Not Entitled To Qualified Immunity Given The Absence Of Even Arguable Probable Cause In The Corrected Affidavit**

Neither the arrest warrant affidavit, Conway's affidavit, nor the "corrected affidavit" in this case provide the requisite arguable probable cause to shield Sorbo with qualified immunity. At most, they provide evidence that Ms. Berg asked whether Mr. Conway—who was already stopped, according to his affidavit-- could hold off on towing a car. Sorbo's claims to the contrary notwithstanding, there is no evidence that Mr. Conway's decision to wait to speak with Mayor Capone was a result of anything but his own free will. Given that Mr. Conway ultimately dropped the car at the behest of his supervisor, despite Sorbo's order to tow it, it is both odd and enlightening that Mr. Conway did not find himself a victim of Sorbo's retaliation as well. Apparently, in Sorbo's eyes, not all interference is equal, and probable cause depends upon the person rather than their actions. Nonetheless, it is beyond questioning that officers of reasonable competence could not disagree that probable cause does not exist, under Connecticut law, to arrest someone for interfering with an officer when they merely ask a third party if they can wait before towing a car.

## **CONCLUSION**

The District Court's decision was well-reasoned, and Sorbo's claims were thoroughly considered below and properly rejected.  For those reasons, and the reasons set forth above, the District Court's decision should be upheld and the case allowed to proceed to trial.

Respectfully Submitted,

THE PLAINTIFF-APPELLEE
ERICA BERG

Dated October 24, 2014

By: _____
Kevin Smith, Esq.
129 Church Street, Suite 400
New Haven, CT 06510
Tel.: 203-980-7559
Fax: 866-236-5477
Email: kevinsmithlaw@gmail.com

Conway Law Firm, LLC
7 Elm Street
New Haven, CT 06510
Tel.: 203-624-1400
Fax: 203-624-6110
Email: conwaylawfirm@gmail.com

HER ATTORNEYS

## PLAINTIFF-APPELLEE'S RULE 32(A)(7) COMPLIANCE CERTIFICATION

1. This brief complies with the type-volume limitations of Fed. R. App. P.32(a)(7)(B) because:

    a. This brief contains 3,337 words total

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    a. This brief has been prepared in a proportionally-spaced typeface using Microsoft Word version 2011 in font size fourteen (14) and  type style Times New Roman.

Dated October 24, 2014

THE PLAINTIFF-APPELLEE
ERICA BERG

By: _____
Kevin Smith, Esq.
129 Church Street, Suite 400
New Haven, CT 06510
Tel.: 203-980-7559
Fax: 866-236-5477
Email: kevinsmithlaw@gmail.com

Conway Law Firm, LLC
7 Elm Street
New Haven, CT 06510
Tel.: 203-624-1400
Fax: 203-624-6110
Email: conwaylawfirm@gmail.com

HER ATTORNEYS